# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

VALEO NORTH AMERICA, INC. and
DELMEX DE JUAREZ S. DE R.L.
DE C.V.,

Case No. 4:15-cv-12555-TGB-MJH
Hon. Terrence G. Berg

Plaintiffs,

v.

TRICO PRODUCTS CORPORATION,        *Answer to Complaint for Patent
                                    Infringement and Counterclaims*

Defendant.

---

KERR, RUSSELL & WEBER, PLC
Fred K. Hermann (P49519)
Richard J. Lara, Jr. (64629)
Counsel for Plaintiffs
500 Woodward Avenue
Detroit, Michigan 48226-3427
(t)(313) 961-0200
(f)(313) 961-0388
fherrmann@kerr-russell.com
rlara@kerr-russell.com

OBLON, McCLELLAND, MAIER
& NEUSTADT, LLP
Eric W. Schweibenz
Robert C. Mattson
Philippe J.C. Signore
John F. Presper
Alexander B. Englehart
Co-Counsel for Plaintiffs
1940 Duke Street
Alexandria, VA 22314
(t)(703) 413-3000

HOWARD & HOWARD
ATTORNEYS, PLLC
Gerald E. McGlynn III (P41149)
Kristopher K. Hulliberger (P66903)
Counsel for Defendant
450 W. Fourth Street
Royal Oak, Michigan 48067
(t) (248) 645-1483
(f) (248) 645-1568
gmcglynn@howardandhoward.com
khulliberger@howardandhoward.com

(f)(703) 413-2220
eschweibenz@oblon.com
rmattson@oblon.com
psignore@oblon.com
jpresper@oblon.com
aenglehart@oblon.com

## ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIMS

NOW COMES Defendant, TRICO PRODUCTS CORPORATION ("Trico"), by and though their attorneys, Howard & Howard Attorneys, PLLC, and for their Answer to Complaint for Patent Infringement, states as follows:

### PARTIES

1.     Valeo North America, Inc. is a Delaware Corporation with its principal place of business at 150 Stephenson Highway, Troy, Michigan 48083.

**ANSWER:**

Trico admits that Valeo North America, Inc. is a Delaware Corporation. Regarding Valeo North America, Inc.'s principal place of business, Defendant neither admits nor denies for lack of knowledge or sufficient information to form a belief and leave Plaintiffs to their proofs.

2.     Delmex de Juarez S. de R.L. de C.V., a *sociedad responsibilidad limitada de capital variable*, is a Corporation organized under the laws of Mexico with its principal place of business at Avenida de las Torres y calle Intermex #1681, Parque Industrial Intermex, Cd. Juarez, Chihuahua 32640.

2

**ANSWER:**

Trico neither admits nor denies for lack of knowledge or sufficient information to form a belief and leave Plaintiffs to their proofs.

3.     Upon information and belief, Defendant Trico Products Corporation is a corporation organized under the laws of New York with its principal place of business at 3255 West Hamlin Road, Rochester Hills, Michigan 48309.

**ANSWER:**

Defendant admits that Trico Products Corporation is a corporation organized under the laws of New York with its principal place of business in Rochester Hills, Michigan.

### JURISDICTION AND VENUE

4.     This lawsuit is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

**ANSWER:**

This paragraph is comprised of a statement of law that is not subject to admission or denial.

5.     Upon information and belief, Defendant is subject to personal jurisdiction in this Court because it is currently doing and has done substantial business in this judicial district, including: (i) employing numerous employees in this judicial district; (ii) designating an agent for service of process in this judicial district; (iii) regularly receiving shipments of infringing wiper devices within this judicial district; (iv) committing acts of patent infringement and/or contributing to or inducing acts of patent infringement by others in this judicial district and

elsewhere in the United States; and (v) regularly doing business or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from products and/or services provided to individuals in this judicial district and in this State.

**ANSWER:**

Admitted.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Defendant regularly conducts business in this judicial district, has regular and established places of business in this judicial district, and/or because certain of the acts complained of therein occurred in this judicial district.

**ANSWER:**

Admitted.

## PATENTS-IN-SUIT

7.     Valeo is the owner by assignment of U.S. Patent No. 7,937,798, entitled "Device for Detachably Linking a Wiper Blade with a Driven Wiper Arm," duly and legally issued on May 10, 2011.  The '798 patent is appended hereto as Exhibit A.

**ANSWER:**

Trico admits that the Complaint attaches what purports to be a copy of U.S.

Patent No. 7,937,798.  Trico denies that U.S. Patent No. 7.937, 798 was duly and

legally issued.  Regarding the ownership by assignment of U.S. Patent No.

4

7,937,798, Defendant neither admits nor denies for lack of knowledge or sufficient information to form a belief and leave Plaintiffs to their proofs.

8.     Valeo is the owner by assignment of U.S. Patent No. 7,891,044, entitled "Device for Detachably Linking a Wiper Blade with Drive Wiper Arm," duly and legally issued on February 22, 2011.  The '044 patent is appended hereto as Exhibit B.

**ANSWER:**

Trico admits that the Complaint attaches what purports to be a copy of U.S. Patent No. 7,891,044.  Trico denies that U.S. Patent No. 7.937, 798 was duly and legally issued.   Regarding the ownership by assignment of U.S. Patent No. 7,891,044, Defendant neither admits nor denies for lack of knowledge or sufficient information to form a belief and leave Plaintiffs to their proofs.

**FIRST CLAIM FOR RELIEF**
(Infringement of U.S. Patent No. 7,937,798)

9.     Upon information and belief, Defendant manufactures, imports, offers for sale, and sells certain windshield wiper products that infringe the '798 patent. For example, upon information and belief Defendant manufactures, imports, offers for sale, and sells certain windshield wiper products, including the Trico ExactFit® 17-15B Wiper Blades and products with similar adapters; the Trico Flex® 18-160 Wiper Blades and products with similar adapters; the Trico NeoForm® 16-1515 Wiper Blades and products with similar adapters; the Trico Tech® 19-190 Wiper Blades and products with similar adapters; the Trico Force® 25-140 Wiper Blades and products with similar adapters; the Trico Sentry® 32-140 Wiper Blades and products with similar adapters; the Trico Ice® 35-160 Wiper Blades and products with similar adapters; the Trico Onyx™ Wiper Blades and products with similar adapters.

**ANSWER:**

5

Trico denies that the '798 patent recites a patentable invention.  To the extent the above paragraph alleges that Trico has infringed a valid patent claim, Trico denies these allegations.  Trico admits it manufactures and sells certain windshield wiper products.  Trico admits its products include a product designated Trico ExactFit® 17-15B; a product designated Trico Flex® 18-160; a product designated Trico NeoForm® 16-1515; a product designated Trico Tech® 19-190; a product designated Trico Force® 25-140; a product designated Trico Sentry® 32-140; a product designated Trico Ice® 35-160; and a product designated Trico Onyx$^{TM}$.  To the extent that the above paragraph includes allegations regarding a level of similarity between the designated products and other product, Trico neither admits nor denies for lack of knowledge or sufficient information to form a belief and leave Plaintiffs to their proofs.

10.    Defendant has been provided notice of its infringement of the '798 patent as of at least October 15, 2014 upon Valeo's filing of a complaint against Defendant at the U.S. International Trade Commission ("ITC").

**ANSWER:**

Trico denies that the '798 patent recites a patentable invention.  Trico denies that it infringes any valid claim of the '798 patent.  Trico admits that it received a copy of a complaint against it at the U.S. International Trade Commission.

11.     Upon information and belief, the infringement by Defendant has been willful.  Defendant has known of the '798 patent since at least October 15, 2014, and its actions resulting in infringement of the '798 patent have been objectively reckless.

**ANSWER:**

Trico denies that the '798 patent recites a patentable invention.  Trico denies that it infringes any valid claim of the '798 patent.  Trico denies the remaining allegations in the above paragraph.

12.     Valeo has been irreparably damaged by such infringement and will continue to be irreparably damaged by such infringement unless enjoined by the Court.

**ANSWER:**

Denied.

## SECOND CLAIM FOR RELIEF
(Infringement of U.S. Patent No. 7,891,044)

13.     Upon information and belief, Defendant manufactures, imports, offers for sale, and sells certain windshield wiper products that infringe the '044 patent. For example, on information and belief, Defendant manufactures, imports, offers for sale, and sells certain windshield wiper products, including the Trico ExactFit® 17-15B Wiper Blades and products with similar adapters; the Trico Flex® 18-160 Wiper Blades and products with similar adapters; the Trico NeoForm® 16-1515 Wiper Blades and products with similar adapters; the Trico Tech® 19-190 Wiper Blades and products with similar adapters; the Trico Force® 25-140 Wiper Blades and products with similar adapters; the Trico Sentry® 32-140 Wiper Blades and products with similar adapters; the Trico Ice® 35-160 Wiper Blades and products

7

with similar adapters; the and Trico Onyx™ Wiper Blades and products with similar adapters.

**ANSWER:**

Trico denies that the '044 patent recites a patentable invention. To the extent the above paragraph alleges that Trico has infringed a valid patent claim, Trico denies these allegations. Trico admits it manufactures and sells certain windshield wiper products. Trico admits its products include a product designated Trico ExactFit® 17-15B; a product designated Trico Flex® 18-160; a product designated Trico NeoForm® 16-1515; a product designated Trico Tech® 19-190; a product designated Trico Force® 25-140; a product designated Trico Sentry® 32-140; a product designated Trico Ice® 35-160; and a product designated Trico Onyx™. To the extent that the above paragraph includes allegations regarding a level of similarity between the designated products and other product, Trico neither admits nor denies for lack of knowledge or sufficient information to form a belief and leave Plaintiffs to their proofs.


14. Defendant has been provided notice of its infringement of the '044 patent as of at least October 15, 2014 upon Valeo's filing of a complaint against Defendant at the ITC.

**ANSWER:**

Trico denies that the '044 patent recites a patentable invention. Trico denies that it infringes any valid claim of the '044 patent. Trico admits that it received a copy of a complaint against it at the U.S. International Trade Commission.

15. Upon information and belief, the infringement by Defendant has been willful. Defendant has known of the '044 patent since at least October 15, 2014, and its actions resulting in infringement of the '044 patent have been objectively reckless.

**ANSWER:**

Trico denies that the '044 patent recites a patentable invention. Trico denies that it infringes any valid claim of the '044 patent. Trico denies the remaining allegations in the above paragraph.

16. Valeo has been irreparably damaged by such infringement and will continue to be irreparably damaged by such infringement unless enjoined by the Court.

**ANSWER:**

Denied.

## **REQUEST FOR A JURY TRIAL**

17. Valeo requests a jury trial of all issues in this action so triable.

**ANSWER:**

Trico admits that the Complaint requests a Jury trial.

9

## **AFFIRMATIVE DEFENSES**

Trico asserts the defenses below with knowledge as to their own actions and on information and belief with respect to the actions of others.  In doing so, Trico does not concede that any of the follow must necessarily be pled as affirmative defenses or that any of the following is not already at issue by virtue of the forgoing denials.  Moreover, Trico reserves its rights to plead additional defenses as discovery into the facts of the matter warrant.

### **FIRST DEFENSE**
(Non-Infringement Of The '798 And The '044 Patents)

1.     Valeo is not entitled to any relief against Trico because Trico has not infringed and is not presently infringing directly, indirectly, by induced or contributory infringement, or in any way (either literally or through application of the doctrine of equivalents), any valid claim of the '798 or the '044 patents.

### **SECOND DEFENSE**
(Invalidity Of The '798 And The '044 Patents)

2.     The asserted claims of the '798 patent are invalid and/or unenforceable for failure to comply with one ore more o the requirements of the United States Patent Laws, 35 U.S.C. §§ 100, et seq., including but not limited to: §§ 101, 102, 103, 112, 116, and or 120.

3.     The asserted claims of the '044 patent are invalid and/or unenforceable for failure to comply with one ore more o the requirements of the United States Patent Laws, 35 U.S.C. §§ 100, et seq., including but not limited to: §§ 101, 102, 103, 112, 116, and or 120.

## THIRD DEFENSE
(Pre-Suit Damages, Induced Infringement And Willful
Infringement Of The '798 And The '044 Patents Are
Precluded)

4.     Valeo did not provide Trico notice of the infringement alleged in the Complaint prior to the October 15, 2014 ITC Complaint, and it failed to otherwise provide Trico notice of the patents-in-suit before serving the ITC Complaint.  For these reasons among others, Valeo is precluded from recovering damages prior to the ITC Complaint pursuant to 35 U.S.C. §287; and as a matter of law, Trico has not induced infringement or willfully infringed the '798 or the '044 patents based on any action or alleged failure to act that preceded the filing of this suit.

## FOURTH DEFENSE
(Injunctive Relief Is Unavailable)

5.     On information and belief, claims by Valeo for enjoinder or other injunctive relief are barred as a matter of law because Valeo has an adequate remedy at law for any claim(s) in the Complaint on which Valeo may ultimately prevail.

**FIFTH DEFENSE**
(The '798 And The '044 Patents Were Procured By
Inequitable Conduct And Are Therefore Unenforceable)

6.       The invention described and claimed in the '044 and '798 patents was disclosed in printed publications in this and a foreign country and in public use or, on information and belief, was on sale in this country more than one year prior to the earliest effective filing date for the applications that resulted in the '044 and '798 patents.

7.       The inventors of the subject matter of the '044 and '798 patents, and those acting in concert with them, failed to disclose to the USPTO any commercial exploitation, offer for sale, public use or publication of the subject matter of these patents that occurred more than one year prior to the earliest effective filing date of the applications that resulted in the '044 and '798 patents at any point during the prosecution of the applications that resulted in these patents.

8.       The commercial exploitation, offer for sale, public use, or publication of the subject matter of the '044 and '798 patents more than one year prior to the earliest effective filing date of the applications that resulted in the '044 and '798 patents is material to its patentability.

9.       The inventors of the subject matter of the '044 and '798 patents, and those acting in concert with them, knew of the commercial exploitation, offer for sale, public use and publication of the subject matter of the '044 and '798 patents

at the time that it occurred more than one year prior to the earliest effective filing date of the application that resulted in the '044 and '798 patents, and knew that the commercial exploitation, offer for sale, public use and publication of the subject matter of the '044 and '798 patents was material to its patentability.

10.     The repeated failures to disclose information material to patentability of the inventions described and claimed in the '044 and '798 patents to the Patent Office was with intent to deceive the Patent Office into issuing the '044 and '798 patents.

11.     The failure to disclose information material to the patentability of the '044 and '798 patents was not corrected during the prosecution of either of the applications that resulted in these patents.

12.     The '044 patent was obtained by inequitable conduct before the United States Patent Office and is unenforceable.

13.     The '798 patent was obtained by inequitable conduct before the United States Patent Office and is unenforceable.

14.     The Defendants incorporate by reference additional details set forth in the third counterclaim asserting that the '044 and '798 patents are unenforceable for having been procured through inequitable conduct in support of this fifth affirmative defense.

## JURY DEMAND

15.    Trico requests a jury trial on any and all issued properly triable to a jury.


## PRAYER FOR RELIEF

WHEREFORE, Trico respectfully requests this Court enter judgment:

A. Dismissing the Complaint against Trico in its entirety, with prejudice;

B. Denying Valeo any and all relief for any claim in the Complaint;

C. Declaring that Trico has not infringed any claim of the '798 patent, directly or indirectly;

D. Declaring that each and every asserted claim of the '798 patent is invalid;

E. Declaring that Trico has not infringed any claim of the '044 patent, directly or indirectly;

F. Declaring that each and every asserted claim of the '044 patent is invalid;

G. Declaring that the '798 patent is unenforceable for having been procured through inequitable conduct;

H. Declaring that the '044 patent is unenforceable for having been procured through inequitable conduct.

I. Declaring that this is an exceptional case under 35 U.S.C. § 285;

J.  Awarding Trico the costs of this action and their reasonable attorneys' fees to the fullest extent permitted by law; and

K. Granting Trico such other and further relief as this Court deems just and proper.

## COUNTERCLAIM OF TRICO PRODUCTS CORPORATION

1.     Trico hereby refers to and incorporates by reference as if fully set forth herein each answer and defense stated above.

2.     Jurisdiction of these counterclaims is based upon the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. §§ 1331, 1337(a), and 1338, as well as Rule 13 of the Federal Rules of Civil Procedure.

3.     These counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, and 28 U.S.C. § 2201, *et seq.*

4.     Plaintiff Valeo has submitted to the person jurisdiction of this court by filing an Action for patent infringement.

5.     By Valeo's filing of its Complaint alleging patent infringement against Trico, an actual controversy exists between Valeo and Trico regarding the infringement and validity of United States Patents No. 7,891,044 ("the '044 Patent") and 7,937,798 ("the '798 Patent"), thereby vesting this Court with subject matter jurisdiction over these counter claims.

6.     Venue is proper in this district.


### FIRST COUNTERCLAIM
(The '798 and '044 Patents Are Invalid For Failure To Satisfy
The Requirements Of The United States Patent)

7.     Trico incorporates by reference the allegations in Paragraphs 1 - 6 of the Counterclaim and all preceding allegations in the Answer as if fully set forth herein.

8.     One or more of the claims of the '798 patent are invalid for failing to comply with the requirements of 35 U.S.C. § 1, *et seq.*, including, without limitation, §§ 101, 102, 103, and/or 112.

9.     One or more of the claims of the '044 patent are invalid for failing to comply with the requirements of 35 U.S.C. § 1, *et seq.*, including, without limitation, §§ 101, 102, 103, and/or 112.

**SECOND COUNTERCLAIM**
(Trico's Products Do Not Infringe Any Valid Claim Of The
'798 Patent Or the '044 Patent.)

10.     Trico incorporates by reference the allegations in Paragraphs 1 - 9 of the Counterclaim and all preceding allegations in the Answer as if fully set forth herein.

11.     Trico has not infringed and does not infringe, either directly, contributorily, or by inducement any valid claim of the '798 patent either literally or under the doctrine of equivalents.

12.     Trico has not infringed and does not infringe, either directly, contributorily, or by inducement any valid claim of the '044 patent either literally or under the doctrine of equivalents.

## THIRD COUNTERCLAIM
### (The '798 Patent And The '044 Patent Are Unenforceable For Having Been Procured Through Inequitable Conduct.)

13.     The '798 patent is unenforceable due to inequitable conduct by the applicants and their attorneys in prosecuting the '268 application, which issued as the '798 patent, before the U.S.P.T.O., in particular, the '798 patent is unenforceable for at least the following reasons based on the existing record before discovery has taken place on these issues.

14.     The '044 patent is unenforceable due to inequitable conduct by the applicants and their attorneys in prosecuting the '054 application, which issued as the '044 patent, before the U.S.P.T.O., in particular, the '044 patent is unenforceable for at least the following reasons based on the existing record before discovery has taken place on these issues.

15.     The '044 patent issued from an application identified as application number 10/536,054, filed with the U.S.P.T.O. on May 23, 2005 ("the '054 application").

16.    The '054 application was assigned to Valeo Wischersysteme GmbH at the time of its filing.

17.    The '054 application was filed as a U.S. National Stage application under 35 U.S.C. § 371 pursuant to the Patent Cooperation Treaty ("PCT") claiming priority to PCT Application No. PCT/EP2003/013062, filed November 21, 2003, which in turn, claimed priority to two Germany national patent applications, No. 102 54 978.8, filed November 26, 2002, and No. 103 23 997.9, filed May 27, 2003.

18.    The '054 application discloses a wiper system including a releasable connection between a wiper blade and a wiper arm.

19.    All of the claims of the '044 patent require, among other things, a wiper blade, a wiper arm, and a releasable connection between the wiper blade and the wiper arm.

20.    The '054 application and the '268 application both named Andreas Fink, Wolfgang Scholl, and Gerhard Schremmer as inventors.

21.    The '798 patent issued from an application identified as application number 12/778,268, filed with the U.S.P.T.O. on May 12, 2010 ("the '268 application").

22.    The '268 application was assigned to Valeo Wischersysteme GmbH at the time of its filing.

23.    The '268 application was filed as a continuation of the '054 application.  This means the disclosure presented in the continuation must be the same as that of the original application; i.e. the continuation should not include anything which would constitute new matter if inserted in the original application.

24.    The '054 application was rejected by the Patent Office under 35 U.S.C. 102 as being anticipated by Valeo PCT Application publication WO 03/080409 to Scholl ("the '409 Scholl reference") in an official action dated February 18, 2010.

25.    Valeo, in responding to the official action on May 18, 2010, did not rebut the Examiner's assertion that the '409 Scholl reference anticipated the subject matter claimed in the '054 application.

26.    Valeo, in responding to the official action on May 18, 2010, relied on their claim of priority for the '054 patent to a document dated May 27, 2003. Valeo made this claim for the purpose of disqualifying the PCT publication of the '409 Scholl reference as prior art to the '054 application.

27.    Pursuant to 35 U.S.C. § 102, in effect at the time of filing of the '054 and the '268 applications, in pertinent part, a person shall be entitled to a patent unless – (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

20

28.     Based on representations made by Valeo to the U.S.P.T.O., the earliest effective filing date for the '054 and the '268 applications is November 21, 2003.

29.     The one-year grace period in pre-AIA 35 U.S.C. § 102(b) is measured only from the filing date of the earliest application filed in the United States directly, or through the PCT.

30.     Any public use or prior sale of the invention in the United States, more than one year prior to November 21, 2003, (i.e., November 21, 2002, "the critical date") renders the '044 and '798 patents invalid.

31.     The subject matter of the '409 Scholl reference is embodied in Valeo's wiper blade products having a component designated as a "Gen II" connector.

32.     The Gen II connector is a component of a device for releasably connecting a wiper blade to a drivable wiper arm, wherein the wiper arm comprises a wiper strip which faces the windscreen to be wiped, wherein the device includes at least one stripped-shape elongate support element, and a slide element is connected to the support element as described in claim 1 of the '044 patent.

33.     The Gen II connector is connected to a coupling section of the wiper arm and is mounted to the slide element in a manner such that it can pivot as described in claim 1 of the '044 patent.

34.     The Gen II connector includes a coupling section that has a tongue shaped insertion section as described in claim 1 of the '044 patent.

35.     The Gen II connector has a seat for the insertion section of the wiper arm as described in claim 1 of the '044 patent.

36.     The coupling section of the wiper arm and the Gen II connector have securing sections for providing a mutual permanent connection therebetween wherein, in order to reach a pre-assembly position in which the longitudinal axis of the wiper arm and the longitudinal axis of the connecting element enclose an angle in the range from approximately 10 degree to 100 degrees, the insertion section can be inserted in a substantially rectilinear manner into the seat, and wherein, in order to reach a final assembly position, the wiper arm and the Gen II connector can be pivoted onto one another about the insertion section/seat contact area until the securing sections allow a permanent mutual connection as described in claim 1 of the '044 patent.

37.     The Gen II connector is a component of a device for releasably connecting a wiper blade to a drivable wiper arm having a coupling section, as described in claims 31 and 32 of the '044 patent.

38.     The Gen II connector is coupled to the wiper blade and is pivotably coupled to one end of the coupling section of the wiper arm as described in claims 31 and 32 of the '044 patent.

39.     The Gen II connector includes at least one securing section for securing the Gen II connector to the coupling section of the wiper arm when the connecting element is pivoted to a closed position, whereupon the wiper blade becomes detachably secured to the wiper arm as described in claims 31 and 32 of the '044 patent.

40.     The securing section of the Gen II connector includes a plurality of resilient securing sections for detachably coupling the Gen II connector to the wiper arm when the connecting element is pivoted to its closed position as described in claim 31 of the '044 patent.

41.     The plurality of resilient securing sections of the Gen II connector define a plurality of resilient locking sections as described in claim 31 of the '044 patent.

42.     The securing section of the Gen II connector includes a plurality of elastically flexible locking tongues for engaging legs of the coupling section in order to lock the connecting element to the coupling section as described in claims 32 of the '044 patent.

43.    The Gen II connector is a component of a wiper blade assembly that is connected to an end portion of a wiper arm where the wiper blade assembly includes a wiper strip intended to wipe a windscreen, an elongate support element supports the wiper strip along the wiper strip and a blade support element is connected to the elongate support element over only a portion of the elongate support element and wherein the wiper strip is connected to the elongate support element over that portion of the elongate element that is connected to the blade support element as described in claim 1 of the '798 patent.

44.    The Gen II connector is pivotally mounted to the blade support element as described in claim 1 of the '798 patent.

45.    The Gen II connector defines a receiving portion shaped to receive a first part of the end portion of the wiper arm at a first location on the connecting element and a securing portion shaped to secure a second part of the end portion of the wiper arm to the connecting element at a second location on the connecting element as described in claim 1 of the '798 patent.

46.    The Gen II connector is configured such that, in a preassembly position, when the receiving portion first receives the first part of the end portion of the wiper arm, the Gen II connector and the end portion of the wiper arm form an oblique angle at the first location as described in claim 1 of the '798 patent.

24

47.     The Gen II connector is further configured such that, after the first part of the end portion of the wiper arm is received by the receiving portion, the end portion of the wiper arm and the connecting element can pivot with respect to each other about the first location until the securing portion secures the second part of the end portion of the wiper arm as described in claim 1 of the '798 patent.

48.     The Gen II connector is a component of a wiper blade assembly including a wiper blade as described in claim 10 of the '798 patent.

49.     The Gen II connector is coupled to the wiper blade such that the Gen II connector and the wiper blade pivot relative to each other about a pivot having a pivot axis extending through lateral side walls of the connector in a direction transverse to the longitudinal axis of the wiper blade.

50.     The Gen II connector has a front portion on a front side of the connector relative to the pivot and a rear portion on the rear side of the connector relative to the pivot where the front portion defines part of an opening on the outer top surface of the front portion and the rear portion has a pair of receiving members that are on respective lateral sides of the rear portion as described in claim 10 of the '798 patent.

51.     The Gen II connector has a midportion extending over the pivot and between the front and rear portions and the midportion extends between lateral sides of the midportion as described in claim 10 of the '798 patent.

52.    The outer top surface of the front portion of the Gen II connector is raised relative to the midportion which extends over the pivot as described in claim 10 of the '798 patent.

53.    The front portion of the Gen II connector has lateral sides that are wider apart than the lateral sides of the midportion which extend over the pivot as described in claim 10 of the '798 patent.

54.    On information and belief, well before the critical date, in early 2001 Valeo provided a device having a Gen II connector to automotive original equipment manufacturers (OEMs) for use with building a vehicle.

55.    The inventors of the '054 and '268 applications, and others working in concert with them or at their direction in preparing and prosecuting the '054 and the '268 applications, were aware of the supply of the device having a Gen II connector to OEMs at the time of its supply in 2001.

56.    On information and belief, the vehicle resulting from the OEM build in 2001 was displayed by the OEM and other individuals unaffiliated with the OEM could view the vehicle.

57.    A device having a Gen II connector was shown in a printed publication in 2002, prior to the critical date.

58.    A device having a Gen II connector was shown in Auto Express magazine, issue 721, dated 11-17 September 2002.

59.    A device having a Gen II connector was featured on vehicles at international Auto Shows in September and October 2002.

60.    Exhibition of the device having a Gen II connector at international Auto Shows resulted in printed publications of the device in September and October of 2002.

61.    On October 2, 2002, images of a device having a Gen II connector were published online in at article titled "Paris Motor Show 2002 – Highlights" hosted at www.cardesignnews.com, on page 11.

62.    On October 23, 2002, images of a device having a Gen II connector were published online under the title of "Peugeot 307 cc, Birmingham International Motor Show 2002," hosted at www.freefoto.com

63.    The international Auto Shows at which the device having a Gen II connector was exhibited, required an admission fee for admittance to the show.

64.    On information and belief, Valeo supplied BMW with a device having a Gen II connector for commercial production of BMW E60 5 series automobiles beginning in 2001.

65.    The inventors of the '054 and '268 applications, and others working in concert with them or at their direction in preparing and prosecuting the '054 and '268 applications, were aware of the supply of the device having a Gen II connector for the BMW E60 5 series at the time of their supply in 2001.

66.   The instructions provided for assembly of the device having a Gen II connector of the BMW E60 follow the steps of inserting into a preassembly position and then pivoting to a final assembly position.

67.   On information and belief, the disclosure of the device having a Gen II connector to OEMs in 2002 resulted in prototype vehicles in public use in the United States more than one year prior to the critical date.

68.   On information and belief, the public use of the device having a Gen II connector in the United States more than one year prior to the critical was made in connection with Valeo's effort to commercially exploit and offer the device having a Gen II connector for sale prior to the critical date.

69.   Valeo developed a windshield wiper product including a component designated as a "Gen IIB" connector in 2001.

70.   The Gen IIB connector is a component of a device for releasably connecting a wiper blade to a drivable wiper arm, wherein the wiper arm comprises a wiper strip which faces the windscreen to be wiped, wherein the device includes at least one stripped-shape elongate support element, and a slide element is connected to the support element as described in claim 1 of the '044 patent.

71.    The Gen IIB connector is connected to a coupling section of the wiper arm and is mounted to the slide element in a manner such that it can pivot as described in claim 1 of the '044 patent.

72.    The Gen IIB connector includes a coupling section that has a tongue shaped insertion section as described in claim 1 of the '044 patent.

73.    The Gen IIB connector has a seat for the insertion section of the wiper arm as described in claim 1 of the '044 patent.

74.    The coupling section of the wiper arm and the Gen IIB connector have securing sections for providing a mutual permanent connection therebetween wherein, in order to reach a pre-assembly position in which the longitudinal axis of the wiper arm and the longitudinal axis of the connecting element enclose an angle in the range from approximately 10 degree to 100 degrees, the insertion section can be inserted in a substantially rectilinear manner into the seat, and wherein, in order to reach a final assembly position, the wiper arm and the Gen IIB connector can be pivoted onto one another about the insertion section/seat contact area until the securing sections allow a permanent mutual connection as described in claim 1 of the '044 patent.

75.    The Gen IIB connector is a component of a device for releasably connecting a wiper blade to a drivable wiper arm having a coupling section, as described in claims  31 and 32 of the '044 patent.

76.    The Gen IIB connector is coupled to the wiper blade and is pivotally coupled to one end of the coupling section of the wiper arm as described in claims 31 and 32 of the '044 patent.

77.    The Gen IIB connector includes at least one securing section for securing the Gen IIB connector to the coupling section of the wiper arm when the connecting element is pivoted to a closed position, whereupon the wiper blade becomes detachably secured to the wiper arm as described in claims 31 and 32 of the '044 patent.

78.    The securing section of the Gen IIB connector includes a plurality of resilient securing sections for detachably coupling the Gen IIB connector to the wiper arm when the connecting element is pivoted to its closed position as described in claim 31 of the '044 patent.

79.    The plurality of resilient securing sections of the Gen IIB connector define a plurality of resilient locking sections as described in claim 31 of the '044 patent.

80.    The securing section of the Gen IIB connector includes a plurality of elastically flexible locking tongues for engaging legs of the coupling section in order to lock the connecting element to the coupling section as described in claims 32 of the '044 patent.

81.     The Gen IIB connector is a component of a wiper blade assembly that is connected to an end portion of a wiper arm where the wiper blade assembly includes a wiper strip intended to wipe a windscreen, an elongate support element supports the wiper strip along the wiper strip and a blade support element is connected to the elongate support element over only a portion of the elongate support element and wherein the wiper strip is connected to the elongate support element over that portion of the elongate element that is connected to the blade support element as described in claim 1 of the '798 patent.

82.     The Gen IIB connector is pivotably mounted to the blade support element as described in claim 1 of the '798 patent.

83.     The Gen IIB connector defines a receiving portion shaped to receive a first part of the end portion of the wiper arm at a first location on the connecting element and a securing portion shaped to secure a second part of the end portion of the wiper arm to the connecting element at a second location on the connecting element as described in claim 1 of the '798 patent.

84.     The Gen IIB connector is configured such that, in a preassembly position, when the receiving portion first receives the first part of the end portion of the wiper arm, the Gen IIB connector and the end portion of the wiper arm form an oblique angle at the first location as described in claim 1 of the '798 patent.

31

85.    The Gen IIB connector is further configured such that, after the first part of the end portion of the wiper arm is received by the receiving portion, the end portion of the wiper arm and the connecting element can pivot with respect to each other about the first location until the securing portion secures the second part of the end portion of the wiper arm as described in claim 1 of the '798 patent.

86.    The Gen IIB connector is a component of a wiper blade assembly including a wiper blade as described in claim 10 of the '798 patent.

87.    The Gen IIB connector is coupled to the wiper blade such that the Gen IIB connector and the wiper blade pivot relative to each other about a pivot having a pivot axis extending through lateral side walls of the connector in a direction transverse to the longitudinal axis of the wiper blade.

88.    The Gen IIB connector has a front portion on a front side of the connector relative to the pivot and a rear portion on the rear side of the connector relative to the pivot where the front portion defines part of an opening on the outer top surface of the front portion and the rear portion has a pair of receiving members that are on respective lateral sides of the rear portion as described in claim 10 of the '798 patent.

89.    The Gen IIB connector has a midportion extending over the pivot and between the front and rear portions and the midportion extends between lateral sides of the midportion as described in claim 10 of the '798 patent.

32

90.     The outer top surface of the front portion of the Gen IIB connector is raised relative to the midportion which extends over the pivot as described in claim 10 of the '798 patent.

91.     The front portion of the Gen IIB connector has lateral sides that are wider apart than the lateral sides of the midportion which extend over the pivot as described in claim 10 of the '798 patent.

92.      On information and belief, well before the critical date, in 2001 Valeo disclosed details of a device having a Gen IIB connector to OEMs.

93.     The inventors of the '054 and '268 applications, and others working in concert with them or at their direction in preparing and prosecuting the '054 and '268 applications, were aware of the disclosure of the device having a Gen IIB connector to OEMs at the time of the disclosure in 2001.

94.     On information and belief, more than one year before the critical date, in 2002, Valeo disclosed details of a device having a Gen IIB connector to OEMs.

95.     The inventors of the '054 and '268 applications, and others working in concert with them or at their direction in preparing and prosecuting the '054 and '268 applications, were aware of the disclosure of the device having a Gen IIB connector to OEMs at the time of the disclosure in 2002 prior to the critical date.

96.    On information and belief, the disclosure of the device having a Gen IIB connector to OEMs in 2002 resulted in prototype vehicles in public use in the United States more than one year prior to the critical date.

97.    On information and belief, the public use of the device having a Gen IIB connector was made in connection with Valeo's efforts to commercially exploit and offer the device having a Gen IIB connector for sale prior to the critical date.

98.    The device having a Gen IIB connector was publicly disclosed in a printed publication prior to the critical date.

99.    Both the device having a Gen II connector and the device having a Gen IIB connector were in public use in the United States prior to the critical date.

100.   The inventors of the '054 and '268 applications, and others working in concert with them or at their direction in preparing and prosecuting the '054 and '268 applications, failed to disclose any commercial exploitation, offer for sale, public use, or publication of the device having a Gen II connector at any point during the prosecution of the '054 application.

101.   The commercial exploitation, offer for sale, public use, or publication of the device having a Gen II connector is material to the patentability of the invention described and claim in the '054 and '268 applications.

102.   The inventors of the '054 and '268 applications, and others working in concert with them or at their direction in preparing and prosecuting the '054 and '268 applications, knew the commercial exploitation, offer for sale, public use, and publication of the device having a Gen II connector was material to the patentability of the invention described and claimed in the '054 and '268 applications.

103.   The inventors of the '054 and '268 applications, and others working in concert with them or at their direction in preparing and prosecuting the '054 and '268 applications, failed to disclose any commercial exploitation, offer for sale, public use, or publication of the device having a Gen IIB connector at any point during the prosecution of the '054 and the '268 applications.

104.   The commercial exploitation, offer for sale, public use, or publication of the device having a Gen IIB connector was material to the patentability of the invention described and claimed in the '054 and '268 applications.

105.   The inventors of the '054 and '268 applications, and others working in concert with them or at their direction in preparing and prosecuting the '054 and '268 applications, knew the commercial exploitation, offer for sale, public use, and publication of the device having a Gen IIB connector was material to the patentability of the invention described and claimed in the '054 and '268 applications.

35

106.   The repeated failures to disclose information material to patentability of the invention described and claimed in the '054 application to the Patent office was with the intent to deceive the patent office into issuing the '044 patent.

107.   The failure to disclose information material to the patentability of the invention described and claimed in the '798 patent was not corrected in the prosecution of the '268 application.

108.   The failure to disclose information material to the patentability of the invention described and claimed in the '798 patent was done with the intent to deceive the patent office into improperly issuing the '798 patent.

109.   The inference of intent to deceive the patent office is the single most reasonable inference from the continuing pattern of failure to disclose information material to patentability of the invention described and claimed in the '044 and '798 patents.

110.   The '044 patent was obtained by inequitable conduct and is unenforceable.

111.   The '798 patent was obtained by inequitable conduct and is unenforceable.

## PRAYER FOR RELIEF FOR COUNTERCLAIMS

WHEREFORE, Trico respectfully requests this Court enter judgment:

36

4:15-cv-12555-TGB-MJH    Doc # 11    Filed 01/27/16    Pg 37 of 39    Pg ID 97

A.      Declaring that Trico has not infringed any claim of the '798 patent, directly or indirectly;

B.      Declaring that each and every claim of the '798 patent is invalid;

C.      Declaring that Trico has not infringed any claim of the '044 patent, directly or indirectly;

D.      Declaring that each and every claim of the '044 patent is invalid;

E.      Declaring that the '798 patent is unenforceable for having been procured through inequitable conduct;

F.      Declaring that the '044 patent is unenforceable for having been procured through inequitable conduct.

G.      Declaring that this is an exceptional case under 35 U.S.C. § 285;

H.      Awarding Trico the costs of this action and their reasonable attorneys' fees to the fullest extent permitted by law; and

I.      Granting Trico such other and further relief as this Court deems just and proper.

## JURY DEMAND

Trico demands a trial by jury of all matters to which it is entitled by jury pursuant to Fed. R. Civ. P. 38, with respect to its Counterclaim.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

Dated: January 27, 2016      /s/Gerald E. McGlynn III
                                         Gerald E. McGlynn III (P41149)
                                         Attorney for Defendant
                                         450 W. Fourth Street
                                         Royal Oak, MI 48067
                                         (248) 645-1483 – telephone
                                         (248) 645-1568 – facsimile
                                         gmcglynn@howardandhoward.com

## <u>Certificate of Service</u>

I hereby certify that on January 27, 2016, I electronically filed *Answer to Complaint for Patent Infringement and Counterclaims* with the Clerk of the Court using the ECF System, which will send notification of such filing to those registered persons/members of the Court's ECF system who are participants in these proceedings via electronic notice of this filing.

*/s/Gerald E. McGlynn III*
Gerald E. McGlynn III (P41149)
